UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY FARR, JR., #292839,

        Petitioner,

                                      CASE NO. 2:09-CV-14831

v.                                 HONORABLE GERALD E. ROSEN

BARRY DAVIS,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, GRANTING THE MOTION TO REPLACE THE FIRST MOTION FOR APPOINTMENT OF COUNSEL BUT DENYING THE MOTION FOR APPOINTMENT OF COUNSEL, AND DENYING A CERTIFICATE OF APPEALABILITY

**I.**    **Introduction**

      This is a federal habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Tommy Farr, Jr. ("Petitioner") was convicted of four counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(f), following a jury trial in the Macomb County Circuit Court and was sentenced to concurrent terms of 24 to 60 years imprisonment on those convictions in 2005. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the scoring of the sentencing guidelines, the effectiveness of trial and appellate counsel, and prosecutorial misconduct.  For the reasons set forth, the Court denies the petition for a writ of habeas corpus, grants Petitioner's outstanding motion to replace his first motion for appointment of counsel but denies the motion for appointment of counsel as amended, and denies a certificate of appealability.

**II.**    **Facts and Procedural History**

      Petitioner's convictions arise from his sexual assault of an acquaintance, Marcel Marie

Makara, at her apartment in Macomb County, Michigan on February 9, 2004. The Court adopts the statement of facts as set forth by defense counsel on direct appeal, to the extent those facts are consistent with the record. Those facts are as follows:

> Marcel Marie Makara testified that on February 9, 2004, she was home alone in her third floor apartment. Appellant lived with a friend, Harold Howard, in a second floor unit. That afternoon, Appellant knocked on her door, told her that he could not access his unit, and asked to place his groceries in her refrigerator until Howard returned. She agreed. He stored his food and he left. When Mr. Howard returned, Appellant came for his groceries. While he was using the restroom, she removed the items from her refrigerator and took them to Appellant's unit. After she returned, Appellant pounded on her door and accused her of stealing a bottle of his soda. She opened the door to hand him the bottle. He pushed the door open and pushed her to the ground. He then placed his hands around her neck and forced her into the bedroom, where she landed on her hands and knees. She hit him on the head with a lamp. He pushed her onto the bed and sat on her back.

> He then removed his clothes and told her to remove hers, which she did. He inserted his fingers into her vagina, placed his mouth on her vagina, had her place his penis in her mouth and penetrated her vagina with his penis. He then attempted to penetrate her anus with his fingers and his penis.

> Afterward, she went to the living room to take her anti-anxiety medication. When she attempted to leave the unit, he returned her to the bedroom and again placed his penis in her vagina. She asked him to get her a cigarette. When he left, she locked and barricaded the door. After her landlord returned, she knocked on his door and asked him to call the police. She was taken to SANE, and later to the hospital. According to Makara, x-rays were taken of her leg and clavicle. "It was a contusion on the clavicle. And they couldn't find anything wrong with my right leg. But, it was sore for quite a while and it would occasionally just give out when I was walking." (TI 180). She also reported bruises on her neck, anus and legs. Makara was later evicted from her apartment. After living at a shelter, she moved in with Appellant's former roommate, Harold Howard, until she found another apartment. She denied any former relationship with Appellant and stated that she suffers from a panic disorder which sometimes distorts her judgment. (TI 138-207; T2 5-29).

> David Zielinski is the landlord of the apartment building. He resided in the unit across the hall from Makara and arrived home between 3:15 and 3:30 p.m. At about 11:30 p.m, he heard a knock. At the door was Makara, who stated that she had been raped by Appellant. She seemed disheveled, agitated and upset but he did not observe any injuries. He stated that he did not hear any noise from Makara's unit that afternoon. Zielinski later evicted Makara. Afterwards, he would see her spend

2

afternoons and evenings at Mr. Howard's apartment. (T2 30-47).

At about midnight, Mt. Clemens Police Officer Joshua Lewis was dispatched to the scene. He made contact with both Makara and Zielinski. He reported that Makara was visibly upset and shaking. He observed what appeared to be two large scratch marks on her face. She stated that she had been raped by Appellant. (T2 50-58).

Mt. Clemens Police Officer Jason Bone, working the midnight shift, was dispatched to the complainant's apartment. According to Bone "She was very shaken, scared at the time he spoke with her. She had several marks all over. She had some scratches on her eye. Also, she had like, a black eye bruise. She had some marks on her neck. Also, she had some other marks that she ended up showing me at a later time on her back." He stated that she told him that she had been raped by Appellant and described to him the manner in which it took place. Bone took photographs and collected her sheets and clothing as evidence. He arrested Appellant on an outstanding warrant and transported him to the station without advising him of his rights. In the car, Appellant stated that he and Makara were involved in a relationship, he had sex with her on that occasion, and that he had sex with her on prior occasions. (T2 59-65, 76-89).

At 3:30 p.m., February 10, 2004, Mt. Clemens Police Detective Jeffrey Bishop went to the Macomb County Jail to interview Appellant. According to Bishop, Appellant stated that he had a relationship with Makara for about three months. At 4:30 p.m. February 6, 2004, he had dinner with her in her apartment. After dinner, she asked him to give her a massage. The massage led to sex.

At 8:30, after sex, she asked him for a cigarette. He went to his apartment to get some. When he returned. she would not allow him to reenter. He denied using any force at any time. Bishop obtained a warrant to search Appellant for forensic evidence, and stated that he observed a scratch on Appellant's right arm and the removal of a blond hair from Appellant's scrotum by the forensic examiner, Renee Diegel. Bishop never spoke with Makara and did not ask Appellant about bruising on Makara's face, arms and neck. (T290-118).

Renee Diegel is the program director of Turning Point's forensic nurse examiner program in Macomb County. She is also an instructor for the National Forensic Nursing Institute at the University of Rochester in New York and a forensic nurse consultant for Houston. Texas, the ETC group and a part time instructor for Macomb County Community College Criminal Justice Training Center. She was not offered as an expert witness. On February 10, 2004, she was working at Turning Point as a forensic nurse examiner. She stated that a sexual assault examination consists of a patient history, a visual assessment, a genital examination and forensic evidence collection. She examined Appellant at the Macomb County Jail pursuant to a warrant. She observed a three centimeter scratch on his lower right arm, estimated

to be about a day old. Collecting evidence from his genital area, she recovered a clump of long, blond hair tucked into his scrotal area. (T2 119-129).

Lisa Boni stated that she is a staff nurse in the emergency room of Garden City Hospital. She is also a contingent with Turning Point in Macomb County, Haven and the Start Program. Boni examined Markara at Turning Point. According to Boni. Makara had thirty-six [36] physical injuries to her body and an additional five or six to her mouth as well as genital injuries. The physical injuries consisted of several areas of abrasions to her face and arms and multiple bruises to her anus and legs.

She also had scratches on her back and several areas which were just tender to touch. Oral injuries consisted of an abrasion to her left upper lip, three abrasions to her left lower lip and two small abrasions to her right lower lip. The vaginal examination located three .5 centimeter abrasion at 6:00, 3:00 and 9:00 and a bleeding abrasion from 9:00 to 11:00 on the vaginal cuff. Boni diagnosed that there had been a trauma. She provided Makara with two antibiotics and a tetanus shot and referred her to a hospital because of her complaints of physical pain to her neck and legs. She categorized the scratches and bruises as superficial. (T2 130-144, 158-168).

Harold Howard stated that Appellant was staying at his apartment as a guest. Makara lived on the upper level. Howard suffers from memory loss and did not recall any incident between Appellant and Makara, although he did recall that she had a red ring around her neck. He stated that Makara and Appellant were friends, but was not aware of a romantic relationship between the two. He maintained that Makara visits him very seldom. (T2 171-182).

The People rested. (T2 182). Defense counsel's motion for directed verdict was heard and denied. (T2 183-186). Appellant waived his right to testify (T2 186-189), and the defense rested.

Pet. App. Brf., pp. 2-5.

At the close of trial, the jury convicted Petitioner of four counts of first-degree criminal sexual conduct. The trial court subsequently sentenced him to concurrent terms of 24 to 60 years imprisonment on those convictions.

Following sentencing, Petitioner, through counsel, filed an appeal of right with the Michigan Court of Appeals asserting that: (1) trial counsel was ineffective for conceding guilt of the aggravating element which increased the severity of the offense, (2) the prosecution failed to

4

establish the element of personal injury to sustain his first-degree CSC convictions, and (3) the sentencing guidelines were mis-scored as to Offense Variable 7 resulting in an increase in his minimum sentencing range. Petitioner also filed a pro per brief on appeal asserting that trial counsel was ineffective for failing to object to the blond hair testimony and for failing to call witnesses such as his sister. The court denied relief on those claims and affirmed Petitioner's convictions. *People v. Farr*, No. 260481, 2006 WL 2380890 (Mich. Ct. App. Aug. 17, 2006) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Farr*, 477 Mich. 949, 723 N.W.2d 882 (2006).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising additional ineffective assistance of counsel issues and new prosecutorial misconduct claims. The trial court denied the motion, ruling that the ineffective assistance of counsel claim had been raised and denied on direct appeal and such claims were barred from further review under Michigan Court Rule 6.508(D)(2), and that Petitioner had failed to establish cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the prosecutorial misconduct claims on direct appeal of his convictions. *People v. Farr*, No. 2004-1183-FC (Macomb Co. Cir. Ct. March 19, 2008) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Farr*, No. 289534 (Mich. Ct. App. April 3, 2009) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Farr*, 485 Mich. 927, 773 N.W.2d 677 (2009).

Petitioner thereafter instituted this federal habeas action, raising the following claims:

I.     Trial counsel was ineffective for conceding guilt of the aggravating element which increased the severity of the offenses; for failing to object to the

5

admission of testimony by several witnesses; for failing to argue the side effects of the victim's medications; for failing to discover DNA test results or seek testing of the victim's bedding and clothing; for failing to seek dismissal of the charges; for failing to discuss trial strategy with him; for failing to interview and call defense witnesses; for failing to seek suppression of his police statements; for failing to object to the admission of the victim's injuries, a blond hair found on his person, and clothing; for acting out the crime; for failing to properly question witnesses; for failing to object to bad acts testimony; and for failing to object to alleged instances of prosecutorial misconduct.[1]

II.     The prosecution failed to present sufficient evidence of personal injury to support his first-degree criminal sexual conduct convictions.

III.    The trial court mis-scored the sentencing guidelines increasing his minimum range from 225 to 375 months to 270 to 450 months.

IV.     The prosecution engaged in numerous instances of misconduct.[2]

V.      Appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel issues and prosecutorial misconduct issues on direct appeal.[3]

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default. Petitioner has filed a reply to that answer. Petitioner has also filed a motion for the appointment of counsel and a motion to replace that motion, along with an amended motion.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective

---

[1]These ineffective assistance of trial counsel issues constitute Petitioner's first, fifth, and eighth numbered habeas claims.

[2]The prosecutorial misconduct issues are contained in Petitioner's fourth and seventh numbered habeas claims.

[3]The ineffective assistance of appellate counsel claim is Petitioner's sixth numbered habeas claim.

date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>         application of, clearly established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of
>         the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535

U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme

Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  The "AEDPA thus imposes

a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

7

decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give

8

reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.**     **Analysis**

      **A.**     **Claims Raised on Direct Appeal**

           **1.**     **Insufficient Evidence Claim**

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of personal injury to support his first-degree criminal sexual conduct convictions. Respondent contends that this claim lacks merit.

The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict ... defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Petitioner was convicted of first-degree criminal sexual conduct under Michigan Compiled Laws § 750.520b(1)(f). The elements of that offense are that the defendant "(1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v. Nickens*, 470 Mich. 622, 629, 685 N.W.2d 657 (2004). Under Michigan law, personal injury means "bodily injury, disfigurement,

10

mental anguish, chronic pain, pregnancy, disease or loss or impairment of a sexual or reproductive organ." MICH. COMP. LAWS §750.520a(n). The Michigan courts have recognized "the legislative judgment that evidence of even insubstantial physical injuries is sufficient to support a conviction for criminal sexual conduct in the first-degree." *People v. Himmelein*, 177 Mich. App. 365, 378, 442 N.W.2d 667 (1989). Physical injuries thus need not be permanent or substantial to satisfy the personal injury element of MICH. COMP. LAWS § 750.520b(1)(f). *See People v. Mackle*, 241 Mich. App. 583, 596, 617 N.W.2d 339 (2000). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense. *See People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993).

Applying the *Jackson* standard, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence of personal injury to support Petitioner's convictions. The court explained:

> A person is guilty of first-degree CSC if he engages in forced or coerced sexual penetration with another person and causes personal injury to the victim. MCL 750.520(b)(1)(f). "'Personal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease or loss or impairment of a sexual or reproductive organ." MCL 750.520a(1). Defendant argues that the evidence was insufficient to show that the victim suffered a bodily injury or mental anguish as defined in the statute. We disagree.
>
> An injury need not be permanent or substantial to satisfy the personal injury element. *People v. Mackle*, 241 Mich App 583, 596; 617 NW2d 339 (2000). Bruising caused by the forceful application of a hand is sufficient to satisfy the element of personal injury. *People v. Hollis*, 96 Mich App 333, 337; 292 NW2d 538 (1980).
>
> Here, the victim testified that defendant choked her, leaving a red mark on her neck. The evidence also indicated that the victim had a large bruise on her right inner thigh, two bleeding contusions on her vaginal cuff, and dozens of scratches and cuts to her face and body. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that the victim's injuries were sufficient to satisfy the personal injury element. *See*

11

> *also People v. Gwinn*, 111 Mich App 223, 239; 314 NW2d 562 (1981). Therefore, we need not address whether the victim also suffered mental anguish. Bodily injury and mental anguish are different aspects of the single element of personal injury and only one need be proven. *People v. Asevedo*, 217 Mich App 393, 481; 551 NW2d 478 (1996).

*Farr*, 2006 WL 2380890 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victim's testimony, combined with the police and medical testimony detailing her injuries, provided sufficient evidence of personal injury to support Petitioner's first-degree criminal sexual conduct convictions. To be sure, the testimony of a victim alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases); *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (victim's testimony sufficient even though not corroborated by witnesses or physical evidence). Because the prosecution established that the victim suffered physical injuries during the assault, the prosecution was not required to prove that she also suffered mental anguish.

Petitioner also challenges the inferences the jury drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The trial testimony and evidence, viewed in a light most favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the

charged offenses and that the victim suffered personal injury.  More importantly, for purposes of habeas review, this Court cannot say that the Michigan Court of Appeals' ruling to that effect was unreasonable.  Habeas relief is not warranted on this claim.

### 2.   **Sentencing Claim**

Petitioner also asserts that he is entitled to habeas relief because the state trial court mis-scored Offense Variable 7 of the state sentencing guidelines.  Respondent contends that this claim is not cognizable upon habeas review and lacks merit.

As an initial matter, the Court notes that Petitioner's sentences are within the statutory maximums.  *See* MICH. COMP. LAWS § 750.520b(1)(f).  A sentence within the statutory limit is generally not subject to federal habeas review.  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  Claims which arise out of a state court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.  *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner makes no such showing.

Moreover, Petitioner cannot prevail on his claim that the trial court erred in scoring the disputed sentencing variable.  Such a claim is not cognizable on federal habeas review because it is a state law claim.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov.19, 1993) (departure from state sentencing guidelines is a state law issue which is not cognizable on federal habeas review); *see also McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  Any error in scoring the offense variables and determining the guideline range does not merit habeas

relief.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  Habeas relief does not lie for perceived state law errors.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Furthermore, even if Petitioner's sentencing guideline claim were cognizable, he would not be entitled to relief.  Petitioner has failed to establish that the state court erred in scoring his sentencing guidelines.  As explained by the Michigan Court of Appeals on direct appeal, there was sufficient evidence in the record, particularly the victim's testimony, to support the scoring of Offense Variable 7 (aggravated physical abuse) at 50 points under the guidelines.  *See Farr*, 2006 WL 2380890 at *2.  Habeas relief is therefore not warranted on this claim.

### 3.  Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective in various respects.  First, as on direct appeal, he asserts that trial counsel was ineffective for conceding his guilt of the aggravating element (personal injury) thereby increasing the severity of the offenses.  Respondent contends that this claim lacks merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have

14

been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

15

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim, finding that Petitioner had failed to establish that counsel was ineffective. The court explained:

> Defendant correctly observes that defense counsel conceded in his closing argument that defendant caused at least some of the victim's injuries. Nevertheless, we find no ineffective assistance of counsel. Defendant was faced with indisputable evidence of the victim's injuries, most of which were external. Although defense counsel conceded that defendant caused some of the victim's injuries, he contended that the victim suffered these injuries in a separate domestic dispute, and that the sex was consensual, as it had been in the past. Considering the evidence of the victim's injuries, we conclude that this was reasonable trial strategy. Placing the injuries in this context enforced defendant's contention that he and the victim had a boyfriend-girlfriend relationship, which made the defense of consent more plausible. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v. Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). That a strategy does not work does not render its use ineffective assistance of counsel. *People v. Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).
>
> Further, assuming that defense counsel's remarks can be construed as conceding the personal injury element for purposes of first-degree CSC statute, a lawyer does not render ineffective assistance by conceding certain points at trial. Only a complete concession of guilt constitutes ineffective assistance of counsel. *People v. Emerson* (After Remand), 203 Mich App 345, 349; 512 NW2d 3 (1994). Conceding an element of the offense does not equate to a concession of guilt on the charged offense. It is clear from defense counsel's questions and remarks at trial that a defense of consent was presented. Defense counsel repeatedly asserted in his closing argument that the element of force was not proven. Because defense counsel argued that there was no evidence of force, which was necessary to prove first or third-degree CSC, he did not concede defendant's guilt to any charged or instructed offense.

*Farr*, 2006 WL 2380890 at *1.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has not established that counsel erred and/or that he was prejudiced by counsel's conduct. The prosecution presented significant evidence of the victim's physical injuries at trial. Thus, it was reasonable trial strategy for counsel to concede that Petitioner was responsible for some physical injury to the victim while maintaining that the

16

sexual activity was consensual. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to meet his burden of establishing that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted.

Second, as on direct appeal, Petitioner asserts that trial counsel was ineffective for failing to object to testimony about the blond hair recovered from his body. The Michigan Court of Appeals denied relief on this claim, stating:

> [D]efendant argues in his Standard 4 brief that counsel was ineffective for failing to object to testimony regarding long blond hairs that were found under defendant's scrotum. The testimony established that these hairs did not come from defendant's body. Defendant asserts that the victim did not have blond hair, and that defense counsel and the prosecutor were aware of this. He argues that defense counsel should have object[ed] to admission as irrelevant and prejudicial. Assuming that defendant's allegations are correct, we are satisfied that the admission of the evidence did not affect the verdict. The jury would have been able to determine the color of the victim's hair and the relevance of the evidence.

*Farr*, 2006 WL 2380890 at *3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Counsel may have reasonably decided not to object to the testimony in order to avoid drawing more attention to it (if the victim had blond hair), because it was not relevant given Petitioner's consent defense, and/or because it was not incriminating (if the victim did not have blond hair). Based upon the record before the Court, it cannot be said that any such decision was unreasonable. Moreover, even assuming that counsel erred, Petitioner has not shown that he was prejudiced by counsel's conduct given his defense that the sexual activity was consensual (such

17

that the blond hair was irrelevant) and given the evidence of guilt presented at trial. Habeas relief is not warranted on this claim.

Third, as on direct appeal, Petitioner asserts that trial counsel was ineffective for failing to present a defense and for failing to call witnesses such as his sister. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning ... guilt or innocence." *Towns*, 395 F.3d 251 at 258. "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id*. (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)); *see also Wiggins*, 539 U.S. at 526.

Decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> Defendant also asserts that defense counsel was ineffective for failing to present a defense and failing to call certain witnesses, and additionally contends that he did not receive discovery materials. However, defense counsel did, in fact, present the defense of consent. Further, we are satisfied that the testimony referenced in

18

defendant's pro se brief would not have impacted the trial. Finally, defendant has not shown that relevant evidence was withheld.

*Farr*, 2006 WL 2380890 at *3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner has not shown that trial counsel was deficient. Counsel was aware of the witnesses (*i.e.*, Petitioner's family members), knew that they had not observed the incident, and reasonably decided to pursue a defense of consent when faced with the victim's testimony and Petitioner's own admissions about his sexual activity with her. Petitioner has not shown that further investigation of the family members as witnesses would have changed counsel's trial strategy or would have otherwise benefitted the defense. As the Supreme Court has recently stated, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary .... Those decisions are due a heavy measure of deference." *Cullen*, 131 S. Ct. at 1407 (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted). Counsel's performance was reasonable under the circumstances of this case.

Second, even if counsel erred, Petitioner has not shown that he was deprived of a substantial defense or was prejudiced by counsel's conduct. None of the witnesses were present when the assault occurred. The only witness affidavit offered by Petitioner, from his sister, concerns the grocery purchases - a tangential matter that, at best, goes to the victim's recollection of events preceding the assault. Petitioner has not presented affidavits from any other witnesses. As such, his claims concerning their testimony are purely conclusory. It is well-settled that conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir.

19

2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Petitioner has failed to establish that trial counsel was ineffective or, more pointedly for purposes of habeas review, that the Michigan Court of Appeals' decision denying relief on this claim is unreasonable. Habeas relief is not warranted.

### B.    Claims Raised on Collateral Review

#### 1.    Procedural Default

Respondent contends that Petitioner's remaining claims concerning the effectiveness of trial counsel and prosecutorial misconduct are barred by procedural default because he first raised those issues on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

20

Petitioner first presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds by citing Michigan Court Rule 6.508(D)(2) and (3). First, the trial court ruled that the ineffective assistance of counsel claim had been raised and denied on direct appeal and such issues were barred from further review under Michigan Court Rule 6.508(D)(2). Normally, a state court's reliance on that rule will not constitute a procedural default because the rule usually serves as a collateral estoppel rule which prohibits a trial court from reconsidering a claim which was already decided against a defendant on direct appeal. *See, e.g., Knight v. Wolfenbarger*, 2011 WL 3204741, *11 ( E.D. Mich. July 28, 2011) ("Because the state courts previously decided this claim on the merits, the trial court's invocation of a rule barring relitigation of the claim does not create a procedural bar to the claim" on habeas review); *David v. McQuiggin*, 2011 WL 2174897, *4 ( E.D. Mich. June 3, 2011). A

21

claim that is decided on the merits on direct appeal is not defaulted for purposes of habeas review merely because the petitioner attempted to litigate the claim a second time in the state courts. *Morse v. Trippett*, 102 F. Supp. 2d 392, 402 (E.D. Mich. 2000).

This case, however, is distinguishable. Petitioner's new ineffective assistance of counsel issues were neither raised nor decided against him on direct appeal. His presentation of other ineffective assistance of counsel issues on direct appeal did not "fairly present" the state courts with an opportunity to review the new issues, such that those issues were not exhausted on direct appeal. *See Wagner v. Smith*, 581 F.3d 410, 415-16 (6th Cir. 2009). "In other words, Petitioner did not exhaust his new allegations of ineffective assistance of counsel during his direct appeal, and under the trial court's interpretation of Rule 6.508(D)(2), a procedural rule independent of federal law, he was prevented from presenting these new allegations on collateral review." *See Moore v. Prelesnik*, No. 2:09-CV-13862, 2011 WL 5375191, *8 (E.D. Mich. Nov. 7, 2011) (invoking procedural default under similar circumstances). Because Petitioner has no further available remedy by which to exhaust his new ineffective assistance of counsel issues, those issues are defaulted.

Second, as to the prosecutorial misconduct claims, the state trial court ruled that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise those claims on direct appeal of his convictions. The state courts thus clearly relied upon a procedural default to deny Petitioner relief on his prosecutorial misconduct claims on collateral review. Accordingly, Petitioner's remaining claims concerning the effectiveness of trial counsel and prosecutorial misconduct are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to

federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th

23

Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues on direct appeal, including claims concerning the effectiveness of trial counsel, the sufficiency of the evidence, and the scoring of the sentencing guidelines. Such issues, although ultimately unsuccessful, were substantial. The claims presented in the motion for relief from judgment are not obviously stronger than the ones raised by appellate counsel on direct appeal. To be sure, Petitioner filed his own pro per brief on direct appeal and did not see fit to raise the ineffective assistance of trial counsel and prosecutorial misconduct claims he later raised on collateral review. Petitioner has failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court finds that the defaulted claims lack merit for the reasons stated *infra*.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### 2. Ineffective Assistance of Counsel Claims

Petitioner asserts that trial counsel was ineffective for failing to object to the admission of testimony by several witnesses, for failing to argue the side effects of the victim's medications, for failing to discover DNA test results or seek testing of the victim's bedding and clothing, for failing to seek dismissal of the charges, for failing to discuss trial strategy, for failing to seek suppression of his police statements, for failing to object to the admission of the victim's injuries and clothing, for acting out the crime, for failing to properly question witnesses, for failing to object to bad acts testimony, and for failing to object to alleged instances of prosecutorial misconduct.

As discussed *supra*, claims concerning the effectiveness of trial counsel are governed by the *Strickland* standard. Thus, to prevail on a claim that trial counsel was ineffective, a habeas petitioner must establish that counsel's performance was deficient and that counsel's performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Petitioner first asserts that trial counsel was ineffective for failing to object to the admission

of police and medical personnel's testimony about the victim and her injuries and for failing to object to the admission of the victim's injuries and clothing.  Such testimony, however, was relevant and admissible under state law.  The fact there were variations in the witnesses' recollections, that their contact with the victim was limited, and/or that there was no photographic evidence to support some of the testimony went to the weight rather than the admissibility of the evidence.  Petitioner has failed to establish that the testimony was improper or that its admission rendered his trial unfair.  Consequently, he has failed to establish that counsel erred or that he was prejudiced by counsel's performance.  Counsel cannot be deemed ineffective for failing to make a futile motion or objection.  *See United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Petitioner also asserts that counsel was ineffective for failing to argue the side effects of the victim's medications.  The jury, however, was well aware that the victim had some mental health problems and was taking medication.  Counsel may have reasonably decided that attacking the victim based upon her medical condition would alienate the jury or support an inference that Petitioner took advantage of the victim.  Counsel's conduct in handling this issue was reasonable.  Moreover, Petitioner has failed to offer any evidence to support his allegations about the medications' side effects or to explain how they affected the victim's credibility.  As noted, conclusory allegations without evidentiary support do not provide a basis for habeas relief.  *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733.  Petitioner has failed to establish that counsel was ineffective.

Petitioner also asserts that trial counsel was ineffective for failing to discover DNA test results or seek testing of the victim's bedding and clothing.  As discussed *supra*, federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case,

or to make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart*, 468 F.3d at 356; *Towns*, 395 F.3d at 258. Petitioner has not shown that counsel was deficient. Given the victim's testimony and Petitioner's own admissions about his sexual activity with her, it was eminently reasonable for counsel to adopt a consent defense and not to seek DNA test results or further scientific testing. Counsel's strategic decision is "due a heavy measure of deference." *Cullen*, 131 S. Ct. at 1407. Moreover, Petitioner has not shown that any tests would have exonerated him or otherwise benefitted his defense. His conclusory allegations are insufficient to demonstrate prejudice. Petitioner has failed to establish that counsel was ineffective under the *Strickland* standard.

Petitioner next asserts that trial counsel was ineffective for failing to seek dismissal of the charges due to the victim's delay in reporting the crime and seeking medical treatment. Petitioner has failed to explain the legal basis for any such motion under state law or to demonstrate that it would have been successful. While the victim's delay may have been relevant to her credibility, it would not have rendered her testimony inadmissible or warranted dismissal of the charges. Counsel cannot be deemed ineffective for failing to make a futile motion. *See Steverson*, 230 F.3d at 225. Petitioner has failed to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.

Petitioner further asserts that trial counsel was ineffective for failing to sufficiently meet with him and discuss trial strategy. Petitioner is not entitled to relief under *Strickland* based upon counsel's alleged failure to adequately meet and consult with him before trial. The record indicates that counsel met with Petitioner at the jail prior to trial to discuss his case and a plea bargain offer. The record further indicates that counsel reviewed the police reports, questioned witnesses about

27

their version of events, and advocated Petitioner's consent defense.  The mere fact that counsel may have spent little time with Petitioner prior to trial "is not enough under *Strickland*, without evidence of prejudice or other defects."  *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003).  Petitioner has failed to establish that he was unable to communicate with counsel or that counsel was unable to investigate and prepare for trial.  He is thus not entitled to habeas relief on this basis.  *See, e.g., Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (petitioner could not prevail on claim that attorneys were ineffective due to infrequent pre-trial visits where he failed to show resulting prejudice); *Anderson v. Calderon*, 232 F.3d 1053, 1086 (9th Cir. 2000) (same).

Petitioner next asserts that counsel was ineffective for failing to seek suppression of his police statements, essentially claiming that his *Miranda* rights were violated.  Petitioner's statements were admissible as party admissions, *see* MICH. R. EVID. 801(d)(2), and there was no *Miranda* violation because he spontaneously made his initial statements while driving in the car with the arresting officer, *see Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (ruling that *Miranda* warnings are required whenever a person in custody is subject to express questioning or its "functional equivalent"), and gave his subsequent statements after being advised of his constitutional rights at the police station.  *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). Petitioner's claim that the arresting officer interrogated him while transporting him to the police station is belied by the officer's testimony.  Petitioner's claim that the interrogating officer did not advise him of his rights is belied by that officer's testimony and the constitutional rights form. Petitioner has failed to show that his statements to police should have been suppressed. Consequently, he has failed to establish that counsel was ineffective.  Counsel cannot be deemed ineffective for failing to make a futile motion or objection.  *See Steverson*, 230 F.3d at 225.

28

Petitioner also asserts that counsel was ineffective for "acting out the crime" and portraying him as a bum, drifter, and stalker. As an initial matter, the Court notes that the trial transcript does not reflect any demonstrative actions by trial counsel. Nonetheless, assuming that counsel "acted out the crime" at the time of trial cited by Petitioner, the record indicates that counsel did so while cross-examining the victim about her version of events in an effort to discredit her testimony. Such a strategy was reasonable under the circumstances. Moreover, there is no indication in the record that counsel portrayed Petitioner as a bum, drifter, or stalker. Rather, counsel questioned the witnesses about their relationships and contacts with Petitioner in an effort to discredit their testimony and bolster the defense case that the sexual activity between Petitioner and the victim was consensual. Counsel's actions were matters of reasonable trial strategy which this Court will not second-guess upon habeas review. Petitioner has not shown that counsel erred and/or that he was prejudiced by counsel's performance.

Petitioner also asserts that counsel was ineffective for failing to properly question witnesses and correct perjured testimony from Harold Howard. The failure by trial counsel to cross-examine a prosecution witness can constitute ineffective assistance of counsel. *See Hence v. Smith*, 37 F. Supp. 2d 970, 983 (E.D. Mich. 1999). However, "courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002). Impeachment strategy is a matter of trial tactics and such decisions are not ineffective "simply because in retrospect better tactics may have been available." *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997); *see also Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). In this case, the record indicates that trial counsel adequately cross-examined the prosecution witnesses about their recollections of events and made

29

a reasonable effort to challenge damaging testimony and elicit favorable testimony in order to bolster Petitioner's consent defense.

Additionally, Petitioner's claim that counsel failed to correct perjured testimony by Harold Howard is not supported by the record. A reading of Howard's testimony shows that he was interviewed by police, although he could not recall certain details and claimed that he did not provide them with information. The fact that a witness contradicts himself or changes his story does not establish perjury. *See, e.g., United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993). Moreover, the record reveals that trial counsel was attempting to show that Howard did not witness the incident, had memory issues, and did not implicate Petitioner in any wrongdoing when questioned by police. Such tactics were reasonable.

In short, Petitioner has not explained with sufficient specificity what more trial counsel could have done in questioning the witnesses which would have benefitted his defense or affected the outcome at trial. The victim's testimony, combined with the nature and severity of her injuries, as well as the supporting police and medical testimony, provided significant evidence of Petitioner's guilt of the charges offenses. Petitioner has failed to establish that counsel was ineffective under the *Strickland* standard.

Petitioner also asserts that trial counsel was ineffective for failing to object to "bad acts" testimony from his landlord about his living arrangement with Harold Howard. The landlord testified that Petitioner helped out Howard initially, but less so as time passed and Howard got behind on his rent. The prosecutor ceased questioning at that point and did not subsequently make a character or propensity argument based upon the testimony. Counsel may have reasonably decided not to object to the landlord's testimony in order to avoid drawing further attention to the

matter and to prevent potentially damaging testimony on a tangential issue. Such a strategy was reasonable. Moreover, the record reveals that trial counsel went on to effectively cross-examine the landlord about more relevant matters, including the fact that he did not hear the assault despite living across the hall from the victim. Petitioner has failed to show that counsel erred and/or that he was prejudiced by counsel's conduct in this regard.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct. Given the Court's determination that the prosecutor did not engage in misconduct, *see* discussion *infra*, Petitioner cannot establish that trial counsel was deficient or that he was prejudiced by counsel's conduct as required under the *Strickland* standard. As noted, defense counsel cannot be deemed ineffective for failing to make a futile objection. *See Steverson*, 230 F.3d at 225. Habeas relief is not warranted on these claims.

### 3.    Prosecutorial Misconduct Claims

Petitioner asserts that the prosecutor engaged in misconduct by eliciting testimony from police and medical personnel regarding the victim's statements, by offering Petitioner's police statements into evidence, by vouching for prosecution witnesses and expressing personal beliefs, by misstating the evidence and misleading the jury, by denigrating Petitioner, and by failing to correct misleading medical testimony.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

31

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before a jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 540-550 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner asserts that the prosecutor engaged in misconduct by eliciting testimony from police and medical personnel regarding the victim's statements and by offering Petitioner's police statements into evidence. It is well-settled, however, that a prosecutor's good-faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008); *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *see also People v. Noble*, 238 Mich. App. 647, 660, 608 N.W.2d 123, 131 (1999). Moreover, the evidence was properly admitted under state law and did not violate Petitioner's constitutional rights. For example, the victim's statements were admissible as prior consistent statements, *see* MICH. R. EVID. 801(d)(1), and their admission did not violate the

Confrontation Clause because she testified at trial and was subject to cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 54 (2004). Additionally, as discussed *supra*, Petitioner's own statements were properly admitted and he has not shown that his *Miranda* rights were violated or that his statements were otherwise involuntary. Petitioner has failed to establish that the prosecutor erred or that he was denied a fundamentally fair trial.

Petitioner also asserts that the prosecutor engaged in misconduct by vouching for prosecution witnesses and expressing personal beliefs. It is well-settled that it is improper for a prosecutor to express his or her own personal beliefs and opinions concerning the credibility of a witness. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own. *See United States v. White*, 58 F. App'x 610, 617-18 (6th Cir. 2003) (citing cases).

The prosecutor in this case did not improperly vouch for the credibility of the prosecution witnesses. Rather, the prosecutor argued that the victim and other witnesses should be believed based upon the substance of their testimony, their demeanor, their lack of motivation to lie, and the other evidence presented at trial. It is well-established that a prosecutor may argue reasonable inferences from the evidence, *see Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), and may argue from the facts that a witness is or is not worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). Petitioner has not shown that the prosecutor's comments were improper or that they

33

deprived him of a fundamentally fair trial.

Petitioner next asserts that the prosecutor engaged in misconduct by misstating the evidence and misleading the jury about his actions and the timing of events on the day in question. It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005). The prosecutor did not misstate the evidence or assume facts not in evidence. Rather, the record reflects that the prosecutor discussed the testimony and argued from a recollection of that evidence that Petitioner was guilty of the charged offenses. A prosecutor has leeway to argue the evidence and reasonable inferences therefrom. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). That Petitioner may have a different interpretation of the testimony does not mean that the prosecutor intentionally mislead the jury or otherwise acted improperly. Petitioner has failed to establish that the prosecutor erred or that he was denied a fundamentally fair trial.

Petitioner next asserts that the prosecutor denigrated him by commenting on the fact that he was unemployed and not paying rent, thereby characterizing him as a drifter and a bum. It is inappropriate for a prosecutor to make personal attacks on a defendant. *See, e.g., United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). The prosecutor's references to Petitioner's living situation, however, were based upon the evidence, were intended to dispute his version of events as set forth in his police statements, and did not rise to the level of a constitutional violation. *See Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (prosecutor's reference to defendant as a demon did not justify setting aside a state conviction); *Hutchison v. Bell*, 303 F.3d 720, 750-51 (6th Cir. 2002) (denying habeas relief where prosecutor described defendant as "evil"); *accord United*

34

*States v. Fields*, 483 F.3d 313, 360-61 (5th Cir. 2007) (use of "colorful pejoratives" is not improper as long as the pejorative is supported by the evidence); *Gonzalez v. Carey*, 58 F. App'x 269, 270 (9th Cir. 2003) (reference to petitioner as a "thug" was reasonable inference from the evidence). Moreover, the prosecutor in this case did not make an improper character or propensity argument based upon Petitioner's economic status. Petitioner has failed to show that the prosecutor's remarks were improper or that they denied him a fair trial.

Petitioner also asserts that the prosecutor engaged in misconduct by failing to correct misleading medical testimony. Petitioner has not shown that any medical testimony presented at trial was false, that the prosecutor failed to correct any misleading information, and/or that the prosecutor's arguments were not based upon the evidence or reasonable inferences therefrom. The prosecutor never stated or implied that Petitioner was responsible for the victim's pre-existing medical conditions. Rather, the prosecutor focused on the injuries arising from the sexual assault as reported by the victim and the other witnesses at trial. Petitioner has not shown that the prosecutor engaged in misconduct.

Furthermore, to the extent that any of the prosecutor's arguments were improper, they were not so flagrant as to render the trial fundamentally unfair. Additionally, any potential prejudice to Petitioner was mitigated by the fact that the trial court properly instructed the jurors on the law, explained that the attorneys' comments were not evidence, and directed them not to let sympathy or prejudice influence their decision. *See Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors...take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has thus failed to establish that the prosecutor engaged in misconduct which

rendered his trial fundamentally unfair.  Habeas relief is not warranted.

### 4.    Ineffective Assistance of Appellate Counsel Claim

Lastly, Petitioner asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the defaulted issues on direct appeal.  Petitioner is not entitled to relief on any such claim.  As explained *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit.  Habeas relief is therefore not warranted on this claim.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his petition and the petition must be denied.   Given this determination, the Court will grant Petitioner's outstanding motion to replace his first motion for appointment of counsel, but will deny his motion for appointment of counsel as amended.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits.  *Id.* at 336-37.  When a court denies relief on

procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85. Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. A certificate of appealability is not warranted.

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE,** that Petitioner's motion to replace his first motion for appointment of counsel is **GRANTED** but his motion for appointment of counsel as amended is **DENIED,** and that a certificate of appealability is **DENIED**. This case is closed.


s/Gerald E. Rosen
Chief Judge, United States District Court


Dated: March 5, 2012


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 5, 2012, by electronic mail and upon Tommy Farr, Jr., #292839, Oaks Correctional Facility, 1500 Caberfae Highway, Manistee, MI 49660 by ordinary mail.

s/Ruth A. Gunther
Case Manager


37